**In re Myron W. SISKIN, Debtor.**

**Myron W. Siskin and Miriam Siskin, Plaintiffs,**

v.

**Complete Aircraft Services, Inc., Harry H. Kutner, Jr., Esq., Sylvia Ross, and Marvin A. Bass, Esq., Defendants.**

**Bankruptcy No. 898–82271–478. Adversary No. 898–8393–346.**

United States Bankruptcy Court, E.D. New York.

Feb. 26, 1999.

M.D. Brofman, and J.S. Myall, Certilman Balin Adler & Hyman, LLP, East Meadow, New York, for Complete Aircraft Services, Inc., Harry H. Kutner, Jr., Sylvia Ross and Marvin A. Bass, defendants.

T.L. Klestadt, and W.D. Holly, Tracy L. Klestadt & Associates, New York City, for Myron Siskin ("Debtor") and Miriam Siskin ("non-debtor plaintiff").

## MEMORANDUM OF DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.*

The issues presented by the parties' cross-motions require us to decide[1] whether Defendants' actions against Debtor constitute willful violations of the automatic stay. Additionally, we are asked to decide whether Non–Debtor Plaintiff, as a non-debtor third-party, has standing to assert a claim under 11 U.S.C. § 362(h) for alleged injuries resulting from the alleged violations of the automatic stay. We grant Defendants' motion to dismiss Non–Debtor Plaintiff's claims as her action is not related to any underlying Bankruptcy case and thus, she has no standing. We deny the remainder of Defendants' mo-

---

* Sitting by special designation to the Eastern District of New York.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b), and the General Reference to the Court under Rule 4 of the General Rules of the United States District Court for the Eastern District of New York. We make our finding of fact and conclusions of law under Fed.R.Civ.P. 52 as made applicable by Fed.R.Bkrtcy.P. 7052. As to Myron Siskin, Debtor–Plaintiff, and Defendants, this is a core proceeding under 28 U.S.C. § 157(b)(2)(G). We elaborate more on the core/non-core nature of Miriam Siskin's claim within the decision.

tion. With regard to Debtor, we find all defendants willfully violated the automatic stay and grant Debtor's Motion for Summary Judgment.

### FACTS

On March 3, 1998, Debtor filed a voluntary chapter 7 petition. Prior to this filing, defendants Sylvia Ross ("Ross") and Complete Aircraft Services ("CASI") obtained money judgments against Myron Siskin in separate state court actions. Ross was represented by Marvin A. Bass, Esq., (together the "Bass defendants") and CASI was represented by Harry H. Kutner, Esq., (together the "Kutner defendants").

The Ross judgment was entered on February 4, 1997. As a result of this judgment, Debtor was ordered to appear for a supplementary proceeding. He did not appear. On December 2, 1997, as a result of Debtor's failure again to appear at the proceeding, Bass defendants sought and the state court issued a Warrant of Arrest for Debtor. The Warrant of Arrest was still outstanding at the time the petition was filed.

The CASI judgment was entered on September 7, 1982. An Order of Commitment was issued on February 27, 1998 as a result of Debtor's continued defiance of a court order to produce certain documents necessary to the satisfaction of that judgment. The Nassau County Sheriff stamped the order as received on March 10, 1998, post-petition.[2]

On March 16, 1998, post-petition, Debtor was arrested and incarcerated based upon the Order of Commitment. On March 18, 1998, Kutner, having actual notice of Debtor's bankruptcy petition, appeared at a hearing and opposed Debtor's petition for release from jail. Likewise, on March 29, 1998, Bass appeared in State Court and opposed Debtor's attempt to obtain a stay of the Warrant of Arrest.

A factual determination that does not affect the outcome of this proceeding is the question of when defendants had notice

of the filing of the petition. The automatic stay is effective at the moment the petition is filed and defendant's knowledge is immaterial to a determination of whether the stay was violated. *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir.1995) (Automatic stay under 11 U.S.C. § 362 is "automatic" because it is triggered upon filing of bankruptcy petition regardless of whether other parties to stayed proceeding are aware petition has been filed). *In re Roberts*, 20 B.R. 914, (Bankr.E.D.N.Y. 1982) (Creditor's initiation of foreclosure proceedings even though notice of stay was not received before foreclosure proceedings had begun is violation of automatic stay imposed by 11 U.S.C. § 362). Knowledge of the filing of the petition does however affect the determination of whether an alleged violation of the automatic stay was willful. *Maritime Asbestosis Legal Clinic v. LTV Steel Co. Inc. (In re Chateaugay Corp.)*, 112 B.R. 526, 530 (S.D.N.Y.1990), rev'd on other grounds, remanded, 920 F.2d 183 (2d Cir.1990); *Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams)*, 127 B.R. 239 (9th Cir. BAP 1991). Both the Bass and Kutner defendants admit to having notice of the filing as of March 17th and because all the alleged violations occurred on or after March 17, determining when defendants first received notice is unnecessary.

Between Debtor's arrest on March 16 and his release 17 days later neither Kutner nor Bass took any affirmative actions to obtain a stay or withdraw the Order of Commitment or the Warrant of Arrest. On April 1, 1998, Non–Debtor Plaintiff paid in excess of $40,-000 to CASI, through Kutner, to obtain Debtor's release from jail. The money was the sole property of Non–Debtor Plaintiff.

Non–Debtor Plaintiff now sues to recover the money she paid to CASI, through Kutner. She claims that this payment was an injury to her that resulted from Kutner's willful violation of the automatic stay. Debtor sues for willful violations of 11 U.S.C. § 362. He claims that defendants' actions were deliberate and intentional violations of the automatic stay. He seeks to recover

---

**2.** We need not reach the factual determination of whether the warrant of arrest was tendered to the Sheriff's Department pre or post-petition, because the analysis will not be substantially affected by such a determination.

damages sustained as a result of these violations.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is a genuine dispute over a material fact when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249, 106 S.Ct. 2505 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, the court must resolve all ambiguities and inferences in favor of the nonmoving party. *Foucher v. First Vermont Bank & Trust Co.*, 821 F.Supp. 916, 922 (D.Vt.1993) (citing *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir.1992)). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. There are no material facts in dispute here.

## DISCUSSION

Three issues are properly before us. First, we must determine whether Non–Debtor Plaintiff has standing to assert a claim against defendants for alleged violations of the automatic stay. Second, we must determine whether Kutner defendants' actions against Debtor constituted a willful violation of the automatic stay. Lastly, we

address Bass defendants' actions and their significance under § 362.

### Non–Debtor Plaintiff's Claim

 We first turn to the question of whether Non–Debtor Plaintiff has standing to assert a claim under 11 U.S.C. § 362(h). Standing is a prerequisite to our jurisdiction.[3] "The issue of standing 'is a threshold question in every federal case, determining the power of the court to entertain the suit' ". *In re Caldor*, 193 B.R. 182, 185 (Bankr. S.D.N.Y.1996) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). "[T]he question of standing thwarts the bankruptcy court's jurisdiction and ends the inquiry." *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 355 (10th Cir.1995); See also *In re Miner*, 229 B.R. 561, 565–66 (2d Cir. BAP 1999).

 Under § 362, "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages ... and, in appropriate circumstances, may recover punitive damages."[4] Non–Debtor Plaintiff is undoubtedly an individual, but the definition of "individual" under 11 U.S.C. § 362(h) does not necessarily include all parties who may have some tangential interest in Debtor's bankruptcy. *Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer)*, 178 B.R. 160, 167 (Bankr.E.D.Tenn.1995). In fact, courts have been reluctant to give redress under § 362 to third parties other than pre-petition creditors. "Nothing in the legislative history counsels that the automatic stay should be invoked in a manner which would advance the interests of some third party, such as the debtor's codefendants, rather than the debtor or its creditors." *Id.* at 167.

 Non–Debtor Plaintiff's claim is clearly independent of Debtor's bankruptcy. The claim does not involve Debtor's property or an interest of the estate. It's determina-

---

3. Standing is a jurisdictional requirement, and as such is open to review at all stages of litigation. See *Land–O–Sun Dairies, Inc., v. Pine State Creamery Co.*, 200 B.R. 125 (E.D.N.C.1996).

4. Although there is some dispute as to whether this section applies to corporate debtors there is

no question that it applies to natural persons such as Non–Debtor Plaintiff. *In re Chateaugay Corp.*, 112 B.R. 526, 532 (S.D.N.Y.1990), rev'd on other grounds, remanded, 920 F.2d 183 (2d Cir. 1990).

tion does not affect Debtor's rights or the estate's administration. "The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. . . . It does not protect non-debtor parties or their property." *Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distributing Inc. (In re Advanced Ribbons & Office Prods.)*, 125 B.R. 259, 263 (9th Cir. BAP 1991). The automatic stay typically does not apply to a non-debtor (or non-creditor) third party unless special circumstances exist. *In re Prairie Trunk Railway*, 112 B.R. 924, 930 (Bankr.N.D.Ill.1990). Such circumstances may exist when there is such identity between a debtor and a third party that judgment against a non-debtor would be binding upon a debtor. *In re Rubenstein*, 105 B.R. 198, 201–202 (Bankr.D.Conn.1989). *See also General Dynamics Corp. v. Veliotis (In re Veliotis)*, 79 B.R. 846, 848 (Bankr. E.D.Mo.1987). The fact that Non–Debtor Plaintiff is Debtor's spouse does not necessarily provide such identity of interest that she falls within the ambit of title 11. "The automatic stay does not afford protection or relief for the Debtor's family or their property." *In re Sumpter*, 171 B.R. 835, 843 (Bankr.N.D.Ill.1994).

Although a 362(h) claim clearly arises under title 11, a plaintiff must have standing to bring the action before this court can adjudicate such a claim. Non–Debtor Plaintiff has no standing to assert a claim under 11 U.S.C. § 362(h). Non–Debtor Plaintiff's claim will be dismissed.

### *Kutner Defendants*

█ Defendants properly state that one of the first determinations this court must make is whether the Contempt Order, on which the Order of Commitment was issued, was made "to satisfy a judgment or simply to punish." *International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 729 (S.D.N.Y.1986). Kutner makes the unconvincing argument that the Contempt Order on which the Order of Commitment is based was issued to punish Debtor and not to satisfy a judgment. The facts are clear. The Order of Commitment of February 27, 1998 was issued to compel debtor to

turn over certain documents, which were necessary to the administration of the judgment against him dated September 7, 1982. If the order were "simply to punish" Debtor for his 16 years of evasion it surely would not have contained a provision by which Debtor could have purged the contempt.

█ Kutner argues that because the Order of Commitment allowed Debtor to purge the contempt by turning over documents rather than by satisfying the judgment, it should not be subject to the stay. This argument is untenable. "Although courts have an inherent power to enforce their orders through civil contempt, actions for civil contempt are considered private collection devices and within the ambit of the automatic stay." *In re Newman* 196 B.R. 700, 704 (Bankr.S.D.N.Y.1996) (citations omitted). The automatic stay is one of the fundamental debtor protections provided by the Bankruptcy Code. *In re Parr Meadows Racing Assoc.*, 92 B.R. 30, 32 (E.D.N.Y.1988) aff'd, in part, rev'd, in part on other grounds 880 F.2d 1540 (2nd Cir.1989). It gives a debtor a breathing spell from its creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits a debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove it into bankruptcy in the first place. *See* H.Rept. No. 95 – 595 to accompany H.R.8200, 95th Cong., 1st Sess. (1977) pp. 340 –344.

Once Debtor filed for bankruptcy, all proceeding to enforce pre-petition judgments were stayed, § 362(a)(2) clearly provides that filing of a petition "operates as a stay, applicable to all entities, of the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." This unambiguous language topples Defendant's argument that because Debtor could have purged the contempt by means other than the satisfaction of the judgment that there was no violation. The violation is clear. Once Debtor filed his petition all actions to collect should have ceased. It was not for Debtor to have to purge himself of the contempt. Debtor's arrest and detainment post-petition were unquestionably violations of the

automatic stay. The question before us, however, is whether Kutner's actions constituted "willful" violations of the automatic stay.

■ Clearly, Kutner's actions of March 18, 1998 in appearing in New York state court and opposing Debtor's petition for release from jail were deliberate. It cannot be said that such an appearance was accidental or inadvertent. Kutner, with knowledge of Debtor's bankruptcy, at the very least had an obligation not to hinder Debtor's release. Once it became clear that Debtor would be unable to secure his own release, a further obligation of taking affirmative action to withdraw the Order of Commitment attached. Failure to take such action constituted a "willful" violation of the stay. " 'Act' within meaning of 11 USC § 362 is not limited to affirmative actions; refusal or failure to take action" also falls within the definition of an act. *In re Dembek*, 64 B.R. 745, 750 (Bankr.N.D.Ohio 1986).

> The protections here come about automatically, and in favor of a specified beneficiary. The automatic stay applies "to all entities"; the discharge injunction applies to "any judgment at any time obtained," and to any "action," any "employment of process," or "any act" to enforce the discharged debtor's liability on account of a debt. It is evasive and disingenuous to argue that, somehow, the Defendants had no obligation to stop collection proceedings they had put into motion before the Debtor's bankruptcy filing. The Defendants' argument is flatly without merit

*Atkins v. Martinez (In re Atkins)*, 176 B.R. 998, 1007–1008 (Bankr.D.Minn.1994).

As in *Atkins*, Defendant here had an affirmative obligation to stop the collection proceedings they had initiated. There is no question Kutner's active opposition to Debt-

or's attempts to have the Order of Commitment stayed, violated the automatic stay in a willful and deliberate manner. Additionally, it is more than clear that Debtor suffered damages as a result of these violations by having to remain incarcerated.

### Bass Defendants

■ The arguments against the Bass defendants are substantially the same as against the Kutner defendants. Having actual knowledge [5] of Debtor's bankruptcy petition, Bass defendants had an affirmative obligation to ensure that the outstanding Warrant of Arrest was not enforced. *In re Atkins*, 176 B.R. at 1007–1008.

Bass' admission that he did not seek to have the Warrant of Arrest withdrawn out of convenience is no defense. Rather, it is indicative of the disregard for the sanctity of the automatic stay which subsection (h) is meant to address. The purpose of the stay is to give breathing room to the debtor and to allow for an orderly and efficient liquidation and/or reorganization of debtor's property. H.Rept. No. 95 *supra*. Nowhere is the convenience of the creditors mentioned as a purpose of the Bankruptcy Code. In fact, the purpose of the code is to ensure an equitable distribution of Debtor's property among all creditors. It would certainly be convenient for creditors to resort to self-help, thus ensuring that their claims would be satisfied to the detriment of other creditors. This, however, is precisely the situation the automatic stay is meant to prevent.

Through his admission it is clear the Bass understood that enforcement of the warrant would violate the stay, yet Bass did nothing to ensure that the warrant was not enforced.[6] Bass defendants' violation goes beyond a mere technical violation in that Bass had actual knowledge of Debtor's petition and

---

5. *See* Plaintiff's Motion for Summary Judgment, Exh. H, Marvin A. Bass letter to his clients, dated March 17, 1998: "Several days ago I received a notice from the Bankruptcy court that Siskin had filed for bankruptcy . . . . (the Sheriff) threw him in jail . . . . my understanding is that once you file for bankruptcy there is an automatic stay which (sic) should have prevented the arrest . . . . feels like a soap opera."

6. As yet another factual example of Bass' contempt for the automatic stay: upon learning of Ms. Siskin's $10,000 payment to CASI, he immediately refused to cooperate in Siskin's release and specifically conditioned his consent or cooperation upon payment. Affidavit of W.D. Holly, Esq., Exh. D. Plaintiff's Motion for Summary Judgment.

still failed to take the necessary action to prevent the enforcement of the Warrant.

Further, when Debtor attempted to have the Warrant of Arrest stayed. Bass actively opposed him in his efforts. As with the Kutner defendants, this opposition cannot be said to have been accidental or involuntary. Bass defendants' actions were clearly an intentional and deliberate attempt to keep the warrant from being stayed in order to coerce Debtor into settling the pre-petition judgment.[7] It is clear that Bass' actions and omissions constitute violations of § 362. Those violations became willful when Bass learned of the bankruptcy filing *In re Chateaugay Corp.,* 112 B.R. at 532. Ross is guilty of Bass' violation by virtue of Bass being his agent.

### DAMAGES

 To determine whether a willful violation merits sanctions, however, it is necessary to decide whether damages were in fact suffered by Debtor. Violation of the automatic stay, standing alone, will not support award of damages under 11 U.S.C. § 362(h) where debtor has suffered no actual damages. *Whitt v. Philadelphia Housing Authority (In re Whitt),* 79 B.R. 611, 615–616 (Bankr.E.D.Pa.1987). *See also In re Alberto,* 119 B.R. 985 (Bankr.N.D.Ill.1990), motion to vacate denied, 121 B.R. 527 (Bankr.N.D.Ill. 1990).

Kutner's violation caused Debtor to be incarcerated for 17 days. This injured Debtor. In addition to the loss of liberty, Debtor, a tax return preparer, lost a significant number of employment opportunities during "tax season" as a result of his incarceration. It is also apparent that Debtor incurred losses in the form of attorney fees paid to obtain his release from jail.

Bass contends that because Debtor was incarcerated under the Order of Commitment and not the Warrant of Arrest that Debtor suffered no actual damages as a result of its violation of the automatic stay. We do not accept this argument.

---

7. Although Bass defendants would have this court believe that because the Warrant of Arrest was not actually enforced that it was not an effective coercive mechanism, we will not accept

For us to find damages, we need evidence to support a finding. Insufficient evidence was provided for us to do so. Accordingly, we will direct the parties to appear at a status conference to set a date for a trial on damages.

### CONCLUSION

Accordingly, we hold that the both Bass and Kutner defendants' actions constituted willful violations of the automatic stay and that these violations did in fact injure the Debtor's Motion for Summary Judgment is granted and Defendants' Motion for Summary Judgment is granted in part and denied in part. Non–Debtor Plaintiff's claim is dismissed as she has no recognized right to assert a claim for violations of the automatic stay. The parties are directed to submit an Order within five (5) days.

such a naive view of the world. The threat of future incarceration can easily be used to coerce debtors into satisfying their obligations.